UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| AARON WESLEY THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 6:18-CV-280-REW |
| v. | ) |
| | ) OPINION AND ORDER |
| ANDREW SAUL, COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Aaron Thomas appeals the Commissioner's partial denial of his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits.[1] The Court confronts the parties' dueling summary judgment motions. DE ##14, 16. Having fully reviewed the record per the applicable legal standards, the Court finds in favor of the Commissioner because substantial evidence supports the administrative decision's legally sound findings.

I.   **Factual and Procedural Background**

Thomas is currently 57 years old and attended high school through completion of the ninth grade. R. at 6, 328.[2] He worked as a coal mining equipment operator and foreman from

---

[1] The Court, for instant purposes, analyzes Thomas's entitlements to the DIB and SSI benefits collectively. The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at \*3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

[2] Thomas was 56 at the time of the cross-motion filing in spring 2019. Additionally, though Thomas testified to having attended school through completion of the ninth grade, SSA filings

approximately 2002 through September 21, 2015—the date of claimed disability onset. R. at 328, 333. Thomas filed Titles II (DIB) and XVI (SSI) applications on October 1, 2015. R. at 71. The SSA denied the claims at the initial level on February 3, 2016, *see* R. at 69–70, and at the reconsideration level (after Office of Quality Review (OQR) assessment and agreement) on September 14, 2016, *see* R. at 194, 201. Thomas formally requested a hearing in late September 2016, *see* R. at 209–210, which occurred before Administrative Law Judge (ALJ) Joyce Francis on August 23, 2017, *see* R. at 49. Attorney Ronald Cox represented Thomas at the hearing, and both Claimant and Vocational Expert (VE) William Ellis testified. *Id.* On April 26, 2018, the ALJ rendered a partially favorable decision, finding that Thomas was not disabled at the time of original claim denial but became disabled on December 8, 2017—as of his 55th birthday—upon change in grid age category. R. at 14–22.

At the hearing, ALJ Francis made several sequential findings per 20 CFR §§ 404.1520(a) and 416.920(a). First, she found that Thomas had not engaged in substantial gainful activity since the alleged disability onset date (September 21, 2015). R. at 16. She then determined that Thomas had several severe impairments—including ischemic heart disease, diabetes with neuropathy, and osteoarthritis—though none that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. R. at 17. The ALJ further found that, despite Thomas's noted impairments, he had the residual functional capacity (RFC) to perform a reduced range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[3] R. at 17–20. Next, ALJ Francis concluded that, while Thomas could not perform any past relevant work, he could nevertheless perform jobs existing in significant numbers in the national economy prior to December 8, 2017,

---

indicate that he completed the tenth grade. *Compare* R. at 6 *with, e.g.*, R. at 333. The distinction is irrelevant for instant purposes.

[3] The Part 404 regulations, pertaining to DIB, mirror the Part 416 regulations pertaining to SSI. For purposes of this opinion, the Court omits all parallel Part 416 citations going forward.

given his age, education, work experience, and RFC. R. at 20–21. However, on that date, the ALJ found, Thomas's age category changed, and he could then, per the grids, no longer perform any qualifying job. R. at 21. ALJ Francis thus held that Thomas became disabled on December 8, 2017, for DIB and SSI purposes. *Id.* The Appeals Council denied review, thu`s upholding the ALJ's decision, in September 2018. R. at 1–4. This action followed in late October 2018.

## II. Review Standard

The Court has thoroughly reviewed and considered the ALJ's decision, the administrative hearing transcript, and the entire (extensive) administrative record. The Court has turned every apt sheet, focusing on the portions of the record to which the parties specifically cite. *See* DE #11 (General Order 13-7) at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision is a limited and deferential inquiry into whether substantial evidence supports the ALJ's factual determinations and whether the conclusions rest on proper legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v.*

*Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not review a claimant's case *de novo*, resolve evidentiary conflicts, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have reached a different original outcome in its own view. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

In determining disability, the ALJ conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job itself. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, the burden shifts to the Commissioner, if the claimant cannot perform past relevant work; the ALJ then determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.*

at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the sequential analysis there ends. *See Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

## III. Analysis

Thomas argues, generally, that substantial evidence does not support the ALJ's determination that, between September 21, 2015 and December 8, 2017, he could perform light work, to the extent defined in the RFC, in positions available in a significant amount in the national economy.

### The ALJ did not reversibly err in finding that Thomas had the RFC to perform a reduced range of light work.

Thomas's RFC-based challenge is twofold. First, Thomas broadly contends that the ALJ assigned insufficient probative weight to the opinions of his treating physicians, Dr. Dye (Thomas's primary care doctor) and Dr. Chandrashekar (his cardiologist). DE #14-1 at 8–10. Second, Thomas argues that ALJ Francis gave too little weight to his subjective complaints about his condition and symptoms. *Id.* at 10–12. The Court finds that substantial evidence supported the ALJ's evidentiary balancing and ultimate RFC conclusion. *See* R. at 1848–50 (Ex. 25F); R. at 2221–26 (Ex. 41).

*1. The ALJ did not improperly discount Dr. Dye's and Dr. Chandrashekar's opinions.*

The ALJ gave Dr. Dye's and Dr. Chandrashekar's opinions—which portrayed Thomas's limitations as much more severe than did the other reviewing physicians' opinions and virtually all testing over time—little probative weight because she found them to be "grossly inconsistent with the objective medical evidence" in the record. R. at 19–20. In challenging this determination, Thomas primarily summarizes Dr. Dye's and Dr. Chandrashekar's findings (*see* R. at 8–10) and perfunctorily contends that the ALJ's characterization of them as "grossly inconsistent" with the full record "just isn't true" and "does not discuss in anyway [sic] where the inconsistencies lie." R. at 10. Notably, Thomas does not point to any medical evidence in the record undermining the other three physicians' findings—upon which the ALJ largely relied—or argue that those findings are in any way inconsistent with the objective medical evidence.[4] Nor does he offer record citations or authority to rebut the ALJ's view that Dr. Dye's and Dr. Chandrashekar's opinions were inconsistent with the objective evidence. Rather, Thomas simply conclusorily argues that the ALJ should have weighed Dr. Dye's and Dr. Chandrashekar's opinions more heavily in her analysis.

As noted, the Court's role is not to rebalance the proof and determine whether substantial evidence could have supported a decision to give Dr. Dye's or Dr. Chandrashekar's opinions

---

[4] Because Thomas does not challenge Dr. Reed's, Dr. Walker's, or Dr. Monderewicz's opinions—or the ALJ's decision to accord them great weight—he has waived these arguments. *Cf. Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (citation omitted) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Parker v. Comm'r of Soc. Sec.*, No. 5:16-CV-278, 2017 WL 2859801, at *3 (N.D. Ohio May 9, 2017), *report and recommendation adopted*, No. 5:16-CV-278, 2017 WL 2840763 (N.D. Ohio July 3, 2017) (discussing "the well-stated concern that judicially reviewing non-briefed claims would have the perverse result of encouraging claimants to simply rely on the reviewing court to become their advocate"). Indeed, Thomas does not argue that the ALJ should have given any less weight to Dr. Reed's, Dr. Walker's, or Dr. Monderewicz's opinions in reaching her RFC determination. He merely maintains that Dr. Dye's and Dr. Chandrashekar's opinions (in addition to Thomas's subjective complaints, discussed *infra*) warranted greater force in the calculus.

greater weight, as Thomas urges—the Court merely assesses whether, on this record, substantial evidence supports the ALJ's decision to weigh the evidence and draw the attendant conclusions as she did. *Warner*, 375 F.3d at 390; *Longworth*, 402 F.3d at 595. The Court concludes that it does. The bulk of clinical medical evidence in the record either fails to illuminate or support the reasons for, or ostensibly conflicts with, Dr. Dye's and Dr. Chandrashekar's RFC-related findings, as the ALJ found.[5] The record thus reveals a fair basis for the ALJ's discounting of these physicians' findings. *See Daniels v. Soc. Sec. Admin.*, 23 F. App'x 316, 317 (6th Cir. 2001) (citing *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988)) ("The Commissioner may reject the opinion of a treating physician when good reasons are identified for not accepting the opinion.").

For example, Dr. Dye's own treatment notes from April 28, 2016 do not support his functional capacity findings from that same date; though Dr. Dye noted serious limitations—including inability to lift more than 10 pounds, inability to stand or walk for more than 2 hours in an 8-hour day or for more than 15 minutes at a time, and inability to sit for more than 3-4 hours in an 8-hour day or for more than 30 minutes at a time, all due to a "recent arterial leg clot . . . with

---

[5] That the ALJ did not specifically identify each evidentiary inconsistency does not controvert her decision to discount these physicians' opinions as unsupported by the full record. *See, e.g.*, *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (explaining that the "ALJ's failure to cite specific evidence does not indicate that it was not considered[]"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (citation omitted). ALJ Francis stated that she reached her conclusions "[a]fter careful consideration of the entire record," (R. at 17), and her noted reasons for affording the other physicians' opinions greater weight—namely, that those opinions were "consistent with the full record" and "supported by both [ ] clinical findings and by the objective findings in the longitudinal medical record in this case[]"—confirm that she based her conclusions on thorough review of the objective medical documentation of record. R. at 19. *See also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion."); *id.* at § 404.1527(c)(4) (providing that "the more consistent a medical opinion is with the record as a whole," the more weight an ALJ will give it). The ALJ explained why she credited the persuasive opinions, and the stark, or "gross[]" (*see* R. at 19), contrast between those and the treating sources was reasonably clear.

7

neuropathy, osteoarthritis of back and . . . [a] history of congestive heart failure" (R. at 1848–50)—his treatment records reflect all normal findings (including regular cardiovascular rate and rhythm, normal respiratory functioning, absence of edema, and only "moderately reduced" range of motion in Thomas's lumbar spine), *see* R. at 1852. At that time, Dr. Dye further observed that Thomas's hypertension and Type II diabetes were under "fair control" and continued his existing medications. R. at 1853–54. He further noted that Thomas experienced no new diabetes- or hypertension-related symptoms. Other treatment records from Dr. Dye in late 2015 and early 2016 reflect similar clinical observations. *See* R. at 1856 (March 15, 2016 visit: all normal physical exam findings, no edema, and direction to continue existing medications); R. at 1860 (March 10, 2016 visit: all normal exam findings); R. at 1394 (October 30, 2015 visit: all normal exam findings).

Post-April 2016 records from Dr. Dye likewise indicate normal physical exam findings. *See, e.g.,* R. at 1945–46 (normal findings on June 20, 2016; directed to continue medications and designated as "stable currently"); R. at 1941 (normal findings on July 25, 2016); R. at 1986–87 (normal findings on October 21, 2016, after recent pacemaker implantation); R. at 2385–86 (normal findings on January 19, 2017); R. at 2373–74 (normal findings on April 27, 2017); R. at 2365 (normal findings on June 21, 2017). There is simply no evidence in Dr. Dye's own treatment records supporting, in any significant way, his opinions regarding Thomas's severely limited lifting, walking/standing, or sitting capacities.

Moreover, other objective medical evidence in the record is largely consistent with Dr. Dye's normal physical exam findings and, thus, inconsistent with his anomalous limiting determinations. *See, e.g.*, R. at 1203–04 (UK HealthCare records noting normal pulmonary and cardiovascular functioning in September 2015); R. at 1405–06 (Appalachian Regional Healthcare

records noting same in March 2016); R. at 1890–91 (Harlan ARH records noting same in June 2016); R. at 1911 (Harlan ARH records noting lack of congestive heart failure or pneumothorax in July 2016); R. at 2052 (Pikeville Medical Center records noting lack of pneumothorax or cardiopulmonary issues in October 2016); R. at 2299 (Pikeville Medical Center records reporting negative findings for respiratory issues, vascular problems, or edema in January 2017). Given the body of clinical medical evidence—all based on documented physical exams—the ALJ reasonably determined that Dr. Dye's RFC form determinations—unsupported by objective medical evidence and inconsistent with the clinical findings of record—were of little probative value, and she weighed them accordingly. *See, e.g.*, *Daniels*, 23 F. App'x at 317 (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) ("The opinions of treating physicians receive greater weight only when they are supported by sufficient objective medical evidence."). There is substantial record support for the ALJ's decision to afford Dr. Dye's opinions little weight; the Court does not (indeed, cannot) second-guess it in such a circumstance.

Similarly, both Dr. Chandrashekar's own clinical findings and the surrounding clinical evidence (discussed above) offer little support for her conclusion that Thomas was limited to the degree opined. Though she found in December 2016 that Thomas was unable to sit for more than 2 hours in a 8-hour day or 15 minutes at a time or stand/walk for more than 2 hours in a day or 20 minutes at a time, required unscheduled breaks, and would need to elevate his legs for 30% of an 8-hour workday (R. at 2222–24), Dr. Chandrashekar's clinical observations made near that time largely reflect normal exam findings. *See, e.g.*, R. at 1956 (September 2016); R. at 1963 (September 2016); R. at 1973 (August 2016), 1980–81 (August 2016). Critically, Dr. Chandrashekar cited and provided no objective medical findings or test results to support her limited functional capacity determinations. Further, like Dr. Dye's determinations, Dr.

9

Chandrashekar's RFC-related determinations are arguably inconsistent with the other objective medical evidence in the record (as outlined *supra*). Accordingly, substantial evidence supports the ALJ's decision to accord Dr. Chandrashekar's opinions little probative weight in the ultimate RFC analysis.

In sum, given the documented discrepancies between Dr. Dye's and Dr. Chandrashekar's findings and the objective record proof (including these doctors' own clinical notes), the ALJ reasonably concluded that they should carry little weight. Their statuses as Thomas's treating physicians do not demand deference, where—as here—their opinions are unsupported, or supported inadequately, by the clinical medical evidence and go against the weight of objective proof. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (conditioning deference to treating physician's opinion on the opinion being "supported by clinical and laboratory diagnostic evidence not inconsistent with other substantial evidence in the record"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[A] treating physician's opinion will not be given controlling weight unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). Accordingly, ALJ Francis did not reversibly err in weighing this proof as she did and deciding the case accordingly.

    2.    *The ALJ did not improperly weigh Thomas's subjective complaints.*

ALJ Francis found that Thomas's subjective descriptions of the intensity, persistence, and limiting effects of his symptoms were not "entirely consistent" with the objective medical evidence. R. at 18. The referenced inconsistencies, per the record, stemmed from comparison of the many normal clinical findings discussed above with Thomas's subjective claims of disabling pain and perceived limitations. For example, though Thomas testified that, at the time of the August 2017 hearing, his pain (on a one-to-ten scale) was "at least an eight or a ten, probably a 12

at times" and he was unable to walk more than 30 feet without adjusting his balance, stand for more than 10 minutes, sit for more than 20-30 minutes, or lift more than 10 pounds (*see* R. at 65–66), the ALJ specifically noted that "the recent treatment record show[ed] . . . no pneumothorax, no acute cardiopulmonary process, and no apparent injury." R. at 18. Substantial medical evidence in the record corroborates the ALJ's characterization and conflicts with Thomas's subjective reports. *See, e.g.*, R. at 2407 (noting that there was "no evidence of congestive heart failure or pneumothorax" in June 2017); R. at 2365 (Dr. Dye finding regular cardiovascular rate and rhythm in June 2017); R. at 2415 (noting clear lungs and regular cardiac rate and rhythm in May 2017); R. at 2394 (finding "no acute abnormalities" in June 2017 x-ray); R. at 2421 (finding clear lungs, no pneumothorax, and normal pulmonary vasculature in May 2017). The other summarized encounters with normal reports further inform the analysis.

Following the required two-step process, the ALJ here assessed the intensity, persistence, and limiting effects of Thomas's symptoms by considering his subjective complaints (namely, his allegations of disabling pain and corresponding functional capacity limitation estimates) against the backdrop of the objective medical evidence. *See* SSR 16-3p ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."); R. at 17–18 (citing SSR 16-3p and outlining the two-step process). The ALJ analyzed Thomas's complaints within the proper legal framework, and substantial objective medical evidence supports her conclusion as to the noted inconsistencies; she thus did not reversibly err in weighing Thomas's complaints as she did, in light of the full record and scope of medical proof. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (observing "that subjective complaints of a claimant can support a claim for disability, if there is also objective

medical evidence of an underlying medical condition in the record"); *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) ("Subjective complaints of pain or other symptoms may support a claim of disability. However, these complaints must be evidenced by an underlying medical condition, and there must be either objective medical evidence confirming the severity of the alleged pain, or there must be an objectively determined medical condition of a severity which can reasonably be expected to give rise to that pain.").[6]

ALJ Francis cited reasonably supportive evidence and adequately explained her reasoning for only partially crediting Thomas's subjective complaints, given their arguable inconsistency with the most recent treatment records and persistent overall medical findings. Though Thomas urges a different outcome, the Court will not substitute Thomas's, or its own conclusions, for the ALJ's, where (as here) substantial evidence supports the ALJ's evidentiary balancing and decisions.

---

[6] Per Thomas, "[i]t does not follow that the ALJ questions Mr. Thomas' statements regarding the intensity, persistence and limiting effects of his symptoms and find they are not consistent with the medical records when determining disability prior to December 8, 2017, and then turn[ed] right around, used the same testimony and the same medical records where there are no medical records contained in the record after December 8, 2017 and find[s] that the record determines an award under the grid." DE #14-1 at 10. This contention mischaracterizes the ALJ's reasoning. The ALJ partially credited Thomas's subjective complaints, *see* R. at 25 (finding them "[s]omewhat consistent" with the objective medical evidence), and weighed them accordingly in conjunction with the other medical proof and opinion evidence (primarily Dr. Reed's, Dr. Walker's, and Dr. Monderewicz's findings, which the ALJ found warranted great weight) to reach her ultimate RFC determination. ALJ Francis then (in step 5) considered Thomas's "age, education, work experience, and residual functional capacity" to conclude that, per Medical-Vocational Rules 202.11 and 202.02, though there were jobs existing in significant numbers in the national economy that Thomas could have performed before turning 55, such job opportunities decreased significantly, determinatively, upon his change in age category at 55. R. at 27–28. The ALJ did not reweigh the medical evidence or Thomas's subjective statements, or revisit her underlying RFC conclusion, in making this step 5 determination per the apt Medical-Vocational Rules.

## IV. Conclusion

The record does not support or vindicate Thomas's challenges to the ALJ's weighing of the proof or ultimate RFC conclusion. For the reasons discussed, substantial evidence supports the ALJ's decision to weigh the evidence in the manner that she did and her resulting determination that Thomas could perform a range of light work as described. Notably, Thomas does not offer any argument opposing the ALJ's finding, per the unchallenged VE testimony, that Thomas could have performed jobs that existed in substantial numbers in the national economy before turning 55. Accordingly, substantial evidence supports both the ALJ's determination as to Thomas's RFC and her conclusion regarding corresponding job availability in the national economy; there thus is no basis to reverse the ALJ's decision regarding Thomas's pre-age-55 non-disability status.

The Court therefore **GRANTS** the Commissioner's motion (DE #16) and **DENIES** Thomas's competing effort (DE #14). A corresponding Judgment follows.

This the 31st day of January, 2020.

Signed By:
*Robert E. Wier*  REW
**United States District Judge**